**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ITSERVE ALLIANCE, INC., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 18-2350 (RMC) |
| L. FRANCIS CISSNA, Director, | ) |
| United States Citizenship and | ) |
| Immigration Services, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## OPINION

By tradition and law, the United States has welcomed foreign workers with specialized training to work temporarily in this country as needed by U.S. employers. The workers in specialty occupations do not come as immigrants; they are given visas for three years to work here. Because non-immigrant H-1B visas are intentionally for a short term, the Immigration and Naturalization Service (INS), in accord with the law, simplified and streamlined the application and approval process in a way inapplicable to immigrants. These H-1B visas have allowed the growth of a business model whereby U.S. employers obtain H-1B visas for foreign workers who are trained in information technology (IT) and provide such persons as temporary workers to other U.S. companies that need IT assistance for a period.

In 2003, Congress established the Citizenship and Immigration Service (CIS) and transferred visa authority to it.[1] CIS has recently withdrawn INS guidance memos and adopted

---

[1] Under the Homeland Security Act of 2002, the Immigration and Naturalization Service (INS) was abolished. *See* Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (2002). Decisions on nonimmigrant petitions, including H-1B petitions, were transferred from the Commissioner of INS (and the Attorney General) to the Secretary of the Department of Homeland Security and

its own guidance, which has caused the H-1B approval process to slow dramatically and resulted in a high level of rejected visa petitions from employers in the IT industry but not others.

Approximately thirty-three cases have been filed in this District challenging the handling of H-1B visa applications by CIS, a constituent agency of the Department of Homeland Security (DHS). Although not "related" within the meaning of Local Civil Rule 40.5(a)(3), the cases have been consolidated before this Court with the agreement of the assigned Judges for briefing on three legal issues under Local Civil Rule 40.5(e):

1. the authority of CIS to grant visas for less than the requested three-year period;

2. the authority of CIS to deny visas to companies that place employees at third-party locations either because the third party is determined to be the employer or because specific and detailed job duties are not provided with the visa application; and

3. the related statute of limitations issues raised by the government.

*See* 3/6/2019 Minute Order Referring Case for Limited Purpose (Consolidation Order), *ERP Analysts v. Cissna*, No. 19-cv-300. Question 2 concerns the employer-employee relationship, the availability of work for a temporary foreign worker, and the foreign worker's maintenance of status. Plaintiffs allege that CIS is applying new versions of these requirements, without engaging in rulemaking, to H-1B applicants that are IT consulting firms and not to other U.S. employers.

---

subdelegated to the Director of CIS. *See* 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens."); 8 U.S.C. § 1184(c)(1) ("The question of importing any alien as a nonimmigrant under subparagraph (H) . . . of section 1101(a)(15) of this title . . . in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer."); 8 C.F.R. § 2.1 (permitting the Secretary of DHS to delegate authority "to administer and enforce the immigration laws"); DHS's Delegation to the Bureau of Citizenship and Immigration Services, Delegation No. 0150.1 § 2(W) (June 5, 2003), https://www.hsdl.org/?abstract&did=234775 (delegating "[a]uthority under the immigration laws . . . to accept and adjudicate nonimmigrant and immigrant visa petitions").

The Court finds, as discussed below, that:

1. The 1991 Regulation was adopted by INS through notice-and-comment rulemaking and the statute of limitations ran out long before this case was filed. It is subject only to an as-applied challenge.

2. CIS issued a 2010 Guidance Memorandum (CIS 2010 Guidance Memo), also referred to as the Neufeld Memo, from which comes a new employer-employee relationship set of requirements. It is timely challenged on an as-applied basis but not as a facial challenge.

3. CIS issued a 2018 Policy Memorandum, PM-602-0157 (CIS 2018 Policy Memo). It can be challenged either facially or as applied.

4. The current CIS interpretation of the employer-employee relationship requirement is inconsistent with its regulation, was announced and applied without rulemaking, and cannot be enforced.

5. The CIS requirements that employers (1) provide proof of non-speculative work assignments (2) for the duration of the visa period is not supported by the statute or regulation and is arbitrary and capricious as applied to Plaintiffs' visa petitions. These requirements were also announced and applied without rulemaking and cannot be enforced.

6. CIS's itinerary requirement was superseded by a later statute that permits employers to place H-1B visa holders in non-productive status and is, therefore, no longer enforceable.

7. CIS has the authority to grant visas for less than the requested three-year period but must provide its reasoning behind any denials, in whole or in part.

Both Plaintiffs' and Defendant's motions for summary judgment will be granted in part and denied in part.[2]

## I.    BACKGROUND

The Immigration and Nationality Act (INA), 8 U.S.C. § 1101 *et seq.*, specifically allows U.S. employers to apply for visas for foreign workers to come to the United States to

---

[2] The subset of cases that are assigned to Judge Rosemary M. Collyer will be remanded to CIS for reconsideration consistent with this Opinion and the Court will order that such reconsideration shall be completed in no more than 60 days. This Opinion and accompanying Order will be filed on the dockets of all the cases assigned to other judges and consolidated for a limited purpose. The parties in those cases will be ordered to file a joint status report regarding the effect of this decision on their specific case no later than two weeks after the issuance of this Opinion.

work permanently (immigrants) or to come to the United States for temporary employment (nonimmigrants). The differences are material in that the former are applying to remain in the United States and the latter are planning to work here on a temporary basis. This distinction has existed since November 1990, when Congress adopted the Immigration Act of 1990, which changed the INA's employment-based visa categories. *See* Pub. L. No. 101-649, 104 Stat. 4978 (1990). As a result, an employer seeking an employment-based *immigrant* visa in order to hire a foreign worker who plans to stay in this country has been required to submit much more information and undergo greater examination than that required for temporary *nonimmigrant* visas.

Critical to understanding the facts is a change in immigration-based enforcement adopted in 2003 when it was moved from INS to CIS. CIS initially adopted and followed pre-existing and long-standing INS guidance memos and regulations. It has recently superseded the INS guidance with its own guidance memos but issued no regulations. CIS defends its guidance and practices as consistent with the law and regulations.

It is useful to know that the Plaintiffs here are all petitioning employers that seek H-1B visas for foreign workers who have expertise in the IT industry. Most Plaintiffs are consulting firms that may place a visa holder with multiple clients over the course of a three-year visa.

## A. H-1B Visas

H-1B[3] visas are *nonimmigrant* visas for temporary workers coming to the United States to work in a specialty occupation. The law admits, temporarily and as nonimmigrants, "an

---

[3] Although commonly referred to as an "H-1B Visa," the statutory cite is to 8 U.S.C. § 1101(a)(15)(H)(i)(b).

alien . . . who is coming temporarily to the United States to perform services . . . in a specialty occupation described in section 1184(i)(1) of this title . . . , who meets the requirements for the occupation specified in section 1184(i)(2) of this title." 8 U.S.C. § 1101(a)(15)(H)(i)(b). For these purposes, a specialty occupation requires a "theoretical and practical application of a body of highly specialized knowledge, and [the] attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States," 8 U.S.C. § 1184(i)(1)(A)-(B); *see also Royal Siam Corp. v. Chertoff*, 484 F.3d 139, 144 (1st Cir. 2007) ("Congress has laid out eligibility standards for the granting of H-1B specialty occupation visas.") (citing 8 U.S.C. § 1101(a)(15)(H)(i)(b)).

The first step when petitioning for an H-1B visa is for the U.S. employer to file a Labor Condition Application with the Department of Labor (DOL). In that application, the employer must attest that certain wages and working conditions for foreign workers will be similar to domestic employees. An employer petitioning for an H-1B visa to admit a nonimmigrant worker does not need to test the local employment market and first hire any qualified, willing, and able U.S. worker. Nor does the 1990 Act require the employer to provide documentary evidence in support of the Labor Condition Application when submitting it to DOL for approval. Rather, U.S. employers are required to "attest" to five labor conditions concerning pay rates, working conditions, labor peace, notice to employees and DOL, and agreement with DOL enforcement, specifically:

1. [The U.S. employer] will pay the alien(s) and other individuals employed in the occupational classification at the place of employment prevailing wages or actual wages whichever are greater;
2. it will provide working conditions that will not adversely affect the working conditions of U.S. workers similarly employed;
3. there is no strike or lockout in the course of a labor dispute in the occupational classification at the place of employment;

4. it has publicly notified the bargaining representative of its employees in the occupational classification at the place of employment of its intent to employ an H-1B alien worker(s), or, if there is no bargaining representative, that it has posted such notice at the place of employment; and

5. the employer must provide the information required in the application about the number of aliens sought, occupational classification, job duties, wage rate and conditions under which the aliens will be employed, date of need, and period of employment.

Interim Final Rule, 56 Fed. Reg. 54720, 54720-21 (October 27, 1991); *see also* 20 C.F.R. §§ 655.731-655.735.  The information required in a Labor Condition Application was also included in the statute.  *See* 8 U.S.C. § 1182(n)(1)(A)(i)(I) and (II), (n)(1)(B), (n)(1)(C), and (n)(1)(D).

The Interim Final Rule quoted above was published by DOL in 1991 to provide a regulatory process to handle Labor Condition Applications authorized by Congress in 1990.  *See* Interim Final Rule, 56 Fed. Reg. 54720.  DOL recognized that the H-1B visa is temporary and that lengthy preapproval inquiries would consume this time.  *Id.* at 54721 ("The Department believes that Congress . . . intended to provide greater protection than under prior law for U.S. and foreign workers without interfering with an employer's ability to obtain the H-1B workers it needs on a timely basis.  Accordingly, the Department is providing that a labor condition application be accepted if it is complete, . . . thereby minimizing the time it takes to obtain approval of H-1B workers.").  As a result, and directly in accord with the 1990 Act, DOL's regulations enforce the terms of Labor Condition Applications (wages, working conditions, etc.) in a *post-facto* complaint-driven system rather than by prior examination.  *See* 8 U.S.C. § 1182(n)(2)(A) (requiring DOL to "establish a process for the receipt, investigation and disposition of complaints respecting a petitioner's failure to meet a condition specified in an application . . . or a petitioner's misrepresentation of material facts in such an application" filed by any aggrieved person or bargaining representative within 12 months of the failure or

misrepresentation).  The DOL enforcement process was adopted in elaborate detail by Congress and placed in the statute.  *See* 8 U.S.C. § 1182(n)(2)(C); 20 C.F.R. § 655.800.

After an employer receives a certificate from DOL, it may apply for an H-1B visa, now with CIS, by submitting Form I-129 and supplemental documentation.  8 C.F.R. § 214.2(h)(2)(i)(A) ("A United States employer seeking to classify an alien as an H-1B . . . temporary employee must file a petition on Form I-129, Petition for Nonimmigrant Worker, as provided in the form instructions.").  Form I-129 requires information about the foreign worker, as well as the employer who files the Form, requires disclosure if the foreign worker is going to work at an off-site location, and asks if an itinerary is provided for the duration of the visa.  *See* Form I-129, https://www.uscis.gov/i-129 (Feb. 5. 2020).  A "Checklist of Required Initial Evidence for Form I-129" posted on the CIS website identifies such information as:

> Evidence showing the proposed employment qualifies as a specialty occupation
>
> Evidence showing the beneficiary is qualified to perform the specialty occupation
>
> . . .
>
> A copy of any written contract between the employer and the beneficiary or a summary of the terms of the oral agreement under which the beneficiary will be employed
>
> An itinerary showing the date and places of assignment if the petition indicates that the beneficiary will be providing services at more than one location
>
> A corresponding Labor Condition Application (LCA) that has been certified by the Department of Labor (DOL) and signed by the petitioner and attorney/representative, if applicable

Checklist of Required Initial Evidence for Form I-129, H-1B Specialty Occupation Worker, https://www.uscis.gov/i-129Checklist (Oct. 9, 2018).

The INS 1991 Regulation regarding nonimmigrants has not been rescinded or modified by CIS. It specifies that the petition for an H-1B visa "must include an itinerary with the dates and locations of the services or training and must be filed with USCIS as provided in the form instructions" whenever service or training will occur in more than one location. 8 C.F.R. § 214.2(h)(2)(i)(B). CIS evaluates the visa petition and additional documental submitted and approves or denies each visa independently. *See id.* § 214.2(h)(9)(i) ("USCIS will consider all the evidence submitted and any other evidence independently required to assist in adjudication."). "An approved petition classified under section 101(a)(15)(H)(i)(b) of the Act for an alien in a specialty occupation shall be valid for a period of up to three years but may not exceed the validity period of the labor condition application." *Id.* § 214.2(h)(9)(iii)(A)(1).

**B.** **INS and CIS Memoranda**

*1.* *Three INS 1995 Guidance Memos*

INS issued a series of "guidance memos" in the mid-90s that addressed the nature of the evidence required in an H-1B visa application. The first INS guidance memorandum was issued on June 6, 1995 and titled "Contracts Involving H-1B Petitioners." American Immigration Lawyers Association, INS on Contracts Involving H-1B Petitions (June 6, 1995), https://www.aila.org/infonet/ins-contracts-involving-h-1b-petitions. The INS June 1995 Memo permitted H-1B visa adjudicators to "request and consider any additional information deemed appropriate to adjudicate a petition," including specifically third-party contracts, on a case-by-case basis. *Id.*

On November 11, 1995, INS issued a second guidance memorandum regarding contract information, with the title "Supporting Documentation for H-1B Petitions." American Immigration Lawyers Association, INS on Supporting Documentation for H-1B Petitions (Nov. 13, 1995), https://www.aila.org/infonet/ins-supporting-documentation-for-h-1b-petitions. This

Memo clarified that it "should not be a normal requirement" for applicants to submit third-party contracts.  *Id.*  Rather, the INS November 1995 Memo instructed that contracts should be requested "only in those cases where the officer can articulate a specific need for such documentation.  The mere fact that a petitioner is an employment contractor is not a reason to request such contracts."  *Id.*

Finally, on December 29, 1995, INS issued a third guidance memorandum regarding H-1B visa applications, titled "Interpretation Of The Term 'Itinerary' Found in 8 CFR 214.2(h)(2)(i)(B) As It Relates To The H-1B Nonimmigrant Classification."  American Immigration Lawyers Association, Interpretation of Itinerary in H-1B Visas (Dec. 29, 1995), https://www.aila.org/infonet/ins-interpretation-of-itinerary-in-h-1b-petitions.  The INS December 1995 Memo first explained that the purpose of the itinerary requirement "is to insure [sic] that alien beneficiaries accorded H status have an actual job offer and are not coming to the United States for speculative employment."  *Id.*  The INS December 1995 Memo also stated that "in the case of an H-1B petition filed by an employment contractor, a general statement of the alien's proposed or possible employment is applicable since the regulation does not require that the employer provide . . . the *exact* dates and places of employment."  *Id.* (emphasis in original).  Finally, the INS December 1995 memo cautioned employment contractor applicants that DOL requires employers to "pay the alien the appropriate wage even during periods of time when the alien is on travel or between assignments."  *Id.*  CIS initially followed all of these INS 1995 Memos.

> 2.    *CIS 2010 Guidance Memo (Origin of Contested Employer-Employee Analysis)*

In 2010, CIS issued its own guidance memorandum that set out eleven (11) factors to be considered in determining "whether a valid employer-employee relationship exists"

between the U.S. employer and the foreign worker. CIS MSJ, Ex. 2, Mem. from Donald Neufeld (Jan. 8, 2010) (CIS 2010 Guidance Memo) [Dkt 15-2] at 3. It was titled "Determining Employer-Employee Relationship for Adjudication of H-1B Petitions, Including Third-Party Site Placements." *Id.* at 1. The CIS 2010 Guidance Memo identified the following factors to consider when evaluating an employer-employee relationship:

> (1) Does the petitioner supervise the beneficiary and is such supervision off-site or on-site?
>
> (2) If the supervision is off-site, how does the petitioner maintain such supervision, *i.e.* weekly calls, reporting back to main office routinely, or site visits by the petitioner?
>
> (3) Does the petitioner have the right to control the work of the beneficiary on a day-to-day basis if such control is required?
>
> (4) Does the petitioner provide the tools or instrumentalities needed for the beneficiary to perform the duties of employment?
>
> (5) Does the petitioner hire, pay, and have the ability to fire the beneficiary?
>
> (6) Does the petitioner evaluate the work-product of the beneficiary, *i.e.* progress/performance reviews?
>
> (7) Does the petitioner claim the beneficiary for tax purposes?
>
> (8) Does the petitioner provide the beneficiary any type of employee benefits?
>
> (9) Does the beneficiary use proprietary information of the petitioner in order to perform the duties of employment?
>
> (10) Does the beneficiary produce an end-product that is directly linked to the petitioner's line of business?
>
> (11) Does the petitioner have the ability to control the manner and means in which the work product of the beneficiary is accomplished?

*Id*. at 3-4. CIS adjudicators were instructed to evaluate these factors using a totality-of-the-circumstances test and to determine if the petitioning employer had established its "right to control" the foreign worker's employment. *Id*. at 4. The CIS 2010 Guidance Memo also indicated that documents used to demonstrate an employer-employee relationship could include

itineraries, one or more employment agreements, an offer letter, contracts between a U.S. client and U.S. petitioning employer that explain the role of the foreign worker with the client, statements of work, position descriptions, etc. *Id*. at 8-9.

The CIS 2010 Guidance Memo also stated that petitioning employers were required to provide itineraries when a foreign worker would be placed at more than one location. Judge Gladys Kessler of this Court decided that the CIS 2010 Guidance Memo constituted only guidance, which left discretion with the adjudicators; thus, it was not required to undergo notice-and-comment rulemaking. *See Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240 (D.D.C. 2010). No appeal was filed.

### 3.    *CIS 2018 Policy Memorandum (PM-602-0157)*

In 2018, CIS issued a Policy Memorandum that "establishe[d] USCIS policy relating to H-1B petitions filed for workers who will be engaged at one or more third-party worksites." CIS MSJ, Ex. 3, 2018 Policy Memorandum (CIS 2018 Policy Memo) [Dkt. 15-3] at 1. It was titled "Contracts and Itineraries *Requirements* for H-1B Petitions Involving Third-Party Worksites." *Id.* (emphasis added). According to CIS, the CIS 2018 Policy Memo "addresse[d] the itinerary requirement . . . and the types of evidence an employer *typically submits* to meet its statutory burden of demonstrating a specialty occupation in the context of placing workers at a third-party worksite." CIS MSJ at 14 (emphasis added).

The CIS 2018 Policy Memo replaced the three INS 1995 Memos that had not required petitioning employers to submit contracts or itineraries with exact dates and locations of employment. *See* CIS 2018 Policy Memo at 1-2.[4] It also reaffirmed the CIS 2010 Guidance

---

[4] The INS June and November 1995 Memos were superseded to the extent contrary to the CIS 2018 Policy Memo but the INS December 1995 Memo was "rescind[ed] . . . and [the CIS 2018 Policy Memo] supersede[d] any guidance from that memo." CIS 2018 Policy Memo at ¶ 3.

Memo and stated that the new policy was complementing those requirements. *Id*. at 2 ("This P[olicy] M[emo] is intended to be read together with the [CIS 2010 Guidance] Memo and as a complement to that policy.").

Critically for present purposes, the CIS 2018 Policy Memo specifically targeted employer petitions that involve third-party worksites and required all such U.S. employer petitioners to establish "by a preponderance of the evidence" that:

> The beneficiary [(foreign worker)] will be employed in a specialty occupation. This means that the petitioner has *specific and non-speculative qualifying assignments* in a specialty occupation for the beneficiary *for the entire time requested in the petition*; and

> The employer will maintain an *employer-employee* relationship with the beneficiary *for the duration of the requested validity period*.

*Id*. at 3 (emphases added). CIS stressed that "H-1B petitions do not establish a worker's eligibility for H-1B classification if they are based on speculative employment or do not establish the actual work." *Id.* at 4. Therefore, "uncorroborated statements describing the role" of the foreign worker at a third-party worksite "are often insufficient." *Id.* The 2018 Policy Memo emphasized the requirement for corroborating "contracts and work orders" by warning that it may otherwise "deny the petition." *Id.* In addition, the CIS 2018 Policy Memo declared that the applicable regulation, initially adopted by the INS in 1991 and interpreted by the INS in its 1995 Guidance Memos, *requires* an itinerary of work sites (and non-speculative work in a specialty occupation) for the duration of a visa for any visa petitions that involve foreign workers performing services in more than one location. *See id*. at 6 (citing 8 C.F.R § 214.2(h)(2)(i)(B)).

Thus, while the INS 1995 Guidance Memos had authorized general statements concerning the foreign worker's role at a third-party site, and not a detailed itinerary unless requested, the CIS 2018 Policy Memo emphasized "[t]here is no exemption from this regulatory

requirement." *Id.* "An itinerary with the dates and locations of the services to be provided must be included in all petitions that require services to be performed in more than one location . . . . Adjudicators may deny the petition if the petitioner fails to provide an itinerary." *Id.*

The requirement of an itinerary is fulsome. "The itinerary should detail when and where the beneficiary will be performing services." *Id.* "Although the regulations only require that an itinerary contain the dates and locations of the services to be provided . . . at multiple worksites, a more detailed itinerary can help to demonstrate that the petitioner has non-speculative employment." *Id.* "[I]t could help" CIS to determine "qualifying assignments," *i.e.*, specific and non-speculative jobs, if a petitioning employer "specifies": the dates of each service; the "names and addresses of the ultimate employer(s)"; names, addresses, and telephone number at each work location; and "[c]orroborating evidence for all of the above." *Id.*

A non-speculative and detailed itinerary that provides work information for the entire duration of the requested visa is now critical because CIS "in its discretion, generally limit[s] the approval period to the length of time demonstrated that the beneficiary will be placed in non-speculative work and that the petitioner will maintain the requisite employer-employee relationship." *Id.* at 7. In other words, although the statute permits a three-year H-1B visa for foreign workers in specialty occupations (with one possible three-year extension), CIS now limits a visa's duration to the length of time the petitioning U.S. employer can show that definite work assignments exist.

CIS attempted to protect the CIS 2018 Policy Memo by limiting language:

> This memorandum is intended solely for the training and guidance of USCIS personnel in performing their duties relative to the adjudication of applications and petitions. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law or by any individual or

other party in removal proceedings, in litigation with the United States, or in any other form or manner.

*Id.*

## C.     Contested H-1B criteria

Plaintiffs challenge CIS's current interpretation and application of three different criteria to receive an H-1B visa:  the revised employer-employee relationship requirement, the new non-speculative work requirement, and the newly-interpreted itinerary requirement.  CIS rejects the terms Plaintiffs use to identify these criteria and argues that its requirements have always been present in the statute and regulation, which have not changed.

### 1.     *Employer-Employee Relationship Requirement*

Only employers may apply for H-1B nonimmigrant visas.  *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b) (requiring the "intending employer" to file the petition); 8 C.F.R. § 214.2(h)(1)(i) ("Under section 101(a)(15)(H) of the Act, an alien may be authorized to come to the United States temporarily to perform services or labor for, or to receive training from, an employer, if petitioned for by that employer."); *id.* § 214.2(h)(2)(i)(A) ("A United States employer seeking to classify an alien as an H-1B . . . temporary employee must file a petition on Form I-129, Petition for Nonimmigrant Worker, as provided in the form instructions.").  In 1991, DOL engaged in formal rulemaking to define the nature of the "employer" who can apply for a Labor Condition Application.  DOL Advanced Notice of Proposed Rulemaking, Alien Temporary Employment Labor Certification Process, 56 Fed. Reg. 11705-01 (March 20, 1991).  After notice and comment, DOL adopted a Final Rule that defined the "employer" as:

> (1) A person, firm, corporation, *contractor*, or other association or organization in the United States which suffers or permits a person to work within the United States;

> (2) Which has an *employer-employee relationship* with respect to employees under this part, *as indicated by the fact that it may hire,*

14

> *pay, fire, supervise or otherwise control the work* of any such employee; and
>
> (3) Which has an Internal Revenue Service tax identification number.

Proposed Rule, Labor Condition Applications and Requirements for Employers Using Aliens on H-1B Visas in Specialty Occupations, 56 Fed. Reg. 37175-01, 37182 (Aug. 5, 1991) (DOL Proposed Rule) (emphasis added).[5]

INS adopted the definition of "employer" used by DOL, *see* INS Final Rule, Temporary Alien Workers Seeking Classification Under the Immigration and Nationality Act, 56 Fed. Reg. 61111, 61121 (Dec. 2, 1991); *see also* 8 C.F.R. § 214.2(h)(4)(ii), and CIS has made no change to the definition. Neither the underlying statute nor the regulation has been amended in relevant part since 1991.

The CIS 2018 Policy Memo instructs adjudicators to look for "[c]ontracts as evidence to demonstrate the employer will maintain an employer-employee relationship" throughout the visa duration. CIS 2018 Policy Memo at 5. CIS advises that "the chain of contracts and/or legal agreements between the petitioner and the ultimate third-party worksite may help USCIS to determine whether the requisite employer-employee relationship exists and/or will exist." *Id.*

The CIS 2010 Guidance Memo plays a role here. Although framed as areas for review, that Memo focused its analysis on the putative employer's "right to control." CIS 2010

---

[5] DOL amended the definition for "employer" in 2000, 2004, and 2008 to acknowledge the role of CIS and new types of H-visas, but neither INS nor CIS adopted DOL's amendments. *See, e.g.*, Final Rule, Employment Standards Administration; Labor Condition Application Requirements for Employers Seeking to Use Nonimmigrants on E-3 Visas in Specialty Occupations; Filing Procedures, 73 Fed. Reg. 19944-01, 19948 (April 11, 2008); 20 C.F.R. § 655.715 (2009).

Guidance Memo at 3 ("In considering whether or not there is a valid 'employer-employee relationship' for purposes of H-lB petition adjudication, USCIS must determine if the employer has a sufficient level of control over the employee. The petitioner must be able to establish that it has the right to control over when, where, and how the beneficiary performs the job."). The CIS 2010 Guidance Memo was expressly adopted by the CIS 2018 Policy Memo and carries its emphasis on the "right to control" to the new interpretation of employer-employee relationship.

### 2. Non-Speculative Work Requirement

In recent H-1B visa denials, CIS has declared that "H-1B petitions do not establish a worker's eligibility for H-1B classification if they are based on speculative employment or do not establish the actual work the H-1B beneficiary will perform at the third-party worksite." Pls.' MSJ, App'x [Dkt. 14-2], Nov. 9, 2018 CIS Decision re ERP Analysts Inc. at 13.[6] The denials emphasize that a petitioning employer must show, at the time it petitions for an H-1B visa, that it "ha[s] a specific work assignment in place" for each foreign worker and must "demonstrate that [it] ha[s] specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested on the petition." Id. CIS will no longer accept attestations to fulfill this requirement. Id.

The CIS 2018 Policy Memo bases its new requirement that the petitioning employer prove non-speculative work in a specialty occupation for the entirety of a visa on the requirement that an H-1B visa holder must be employed in a specialty occupation.[7] See CIS

---

[6] All page references to Plaintiffs' Appendix to its Motion for Summary Judgment refer to the electronic case filing (ECF) page number.

[7] Congress defined specialty occupation as:

an occupation that requires—

2018 Policy Memo at 3 ("The beneficiary will be employed in a specialty occupation. This means that the petitioner has specific and non-speculative qualifying assignments in a specialty occupation for the beneficiary for the entire time requested in the petition.").

---

> (A) theoretical and practical application of a body of highly specialized knowledge, and
>
> (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.

8 U.S.C. § 1184(i)(1). The 1991 Regulation also defines a specialty occupation as

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States.

8 C.F.R. § 214.2(h)(4)(ii). And the 1991 Regulation further clarified that:

> To qualify as a specialty occupation, the position must meet one of the following criteria:
>
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties [is] so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id*. § 214.2(h)(4)(iii)(A).

*3.     Itinerary Requirement*

INS originally issued the 1991 Regulation that requires an "itinerary" for temporary foreign workers who work in multiple locations; it clarified in the December 1995 Memo that it "could accept a general statement of the alien's proposed or possible employment, since the regulation does not require that the employer provide the *exact* dates and places of employment." INS December 1995 Memo. CIS has rescinded the INS December 1995 Memo and now requires an itinerary showing specific work and location for the entire duration of the requested visa at the time of application. The itinerary requirement in the 1991 Regulation itself remains as issued by INS:

> A petition that requires services to be performed or training to be received in more than one location must include an itinerary with the dates and locations of the services or training and must be filed with *USCIS* as provided in the form instructions. The address that the petitioner specifies as its location on the Form I-129 shall be where the petitioner is located for purposes of this paragraph.

*Id*. § 214.2(h)(2)(i)(B) (italics used to show where CIS replaced INS). What is new under the CIS 2018 Policy Memo is the CIS requirement that jobs in specialty occupations are proven by evidence submitted with the petition for the entire duration of the requested visa.

**D.     Procedural History**

After experiencing what they believed to be improper denials, IT consulting agencies filed approximately thirty-three separate lawsuits in this District Court challenging the authority of CIS to deny petitions based on what Plaintiffs argue are improper interpretations and applications of the employer-employee relationship, non-speculative work assignment, and itinerary requirements. The Calendar Committee for the District Court consolidated the cases for a single decision on three overarching legal questions as identified above. As this Court has the first of the approximately thirty-three cases, the consolidated issues were briefed and argued

under case number 18-cv-2350, *Itserve Alliance, Inc. v. United States Citizenship and Immigration Services*. The issues are ripe for review.[8]

## II.    LEGAL STANDARDS

### A.    Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In a case involving review of a final agency action under the Administrative Procedures Act, 5 U.S.C. § 706, however, the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (internal citation omitted), *appeal dismissed*, Nos. 06-5419 & 07-5004, 2007 WL 1125716 (D.C. Cir. Mar. 30, 2007); *see also Charter Operators of Alaska v. Blank*, 844 F. Supp. 122, 126-27 (D.D.C. 2012); *Buckingham v. Mabus*, 772 F. Supp. 2d 295, 300 (D.D.C. 2011). The APA assigns to the agency the resolution of factual issues and ability to make decisions and issue rules supported by the administrative record, while "'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Sierra Club*, 459 F. Supp. 2d at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record

---

[8] *See* Mem. in Supp. of Pls.' Consolidated Mot. for Summ. J. (Pls.' MSJ) [Dkt. 14-1]; Gov't's Opp'n to Pls.' Consolidated Mot. for Summ. J. and Cross-Mot. (CIS MSJ) [Dkt. 15]; Pls.' Consolidated Resp. to the Agency's Cross-Mot. for Summ. J. and Reply in Supp. of Pls.' Mot. for Summ. J. (Pls.' Opp'n) [Dkt. 17]; Gov't's Reply in Supp. of its Cross-Mot. [Dkt. 19].

and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977)).

**B.    Administrative Procedure Act**

The Administrative Procedure Act (APA), 5 U.S.C. § 500 *et seq.*, authorizes federal courts to review federal agency actions and determine if they are arbitrary, capricious, or not in accord with law.  5 U.S.C. § 706(2)(A); *see also Tourus Records, Inc. v. DEA*, 259 F.3d 731, 736 (D.C. Cir. 2001).

There are time-tested principles behind this review.  First, "an agency's power is no greater than that delegated to it by Congress."  *Lyng v. Payne*, 476 U.S. 926, 937 (1986); *see also Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 621 (D.C. Cir. 1992).  Second, agency actions beyond delegated authority are *ultra vires* and should be invalidated.  *Transohio*, 967 F.2d at 621.  Third, courts look to an agency's enabling statute and subsequent legislation to determine whether the agency has acted within the bounds of its authority.  *Univ. of D.C. Faculty Ass'n/NEA v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 163 F.3d 616, 620-21 (D.C. Cir. 1998) (explaining that *ultra vires* claims require courts to review the relevant statutory materials to determine whether "Congress intended the [agency] to have the power that it exercised when it [acted]").

When reviewing an agency's interpretation of its enabling statute and the laws it administers, courts are generally guided by "the principles of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 . . . (1984)."  *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 754 (D.C. Cir. 2007).  *Chevron*'s Step One requires a court to determine "[i]f Congress has directly spoken to [an] issue, [if so,] that is the end of the matter."  *Confederated Tribes of Grand Ronde Cmty. v. Jewell*, 830 F.3d 552, 558 (D.C. Cir. 2016) (discussing *Chevron*, 467 U.S. at 842-43).  When Congress's intent is unambiguous, both the

agency and the Court must honor that intent. *See Lubow v. Dep't of State*, 783 F.3d 877, 884 (D.C. Cir. 2015) (quoting *Chevron*, 467 U.S. at 842-43). *Chevron* Step Two comes into play when the text is silent or ambiguous. If the text is silent or ambiguous, courts must "determine if the agency's interpretation is permissible, and if so, defer to it." *Confederated Tribes*, 830 F.3d at 558. A permissible interpretation need not be "the best interpretation, only a reasonable one." *Van Hollen, Jr. v. FEC*, 811 F.3d 486, 492 (D.C. Cir. 2016) (internal quotation marks omitted).

Even when an interpretation is reasonable under *Chevron*, "agency action is always subject to arbitrary and capricious review under the APA." *Confederated Tribes*, 830 F.3d at 559. An interpretation is arbitrary and capricious if the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Agape Church, Inc. v. FCC*, 738 F.3d 397, 410 (D.C. Cir. 2013) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A reviewing court must decide whether the agency action is "within the scope of [the agency's] lawful authority" and supported by "reasoned decisionmaking." *Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75, 77 (D.C. Cir. 2006) (internal quotation marks omitted).

If an agency action results in a change of its position, the agency must "display awareness" of the change, but the agency is not required to meet a "heightened standard for reasonableness." *Mary V. Harris Found. v. FCC*, 776 F.3d 21, 24 (D.C. Cir. 2015) (internal quotation marks omitted). "So long as any change is reasonably explained, it is not arbitrary and capricious for an agency to change its mind in light of experience, or in the face of new or additional evidence, or further analysis or other factors indicating that the agency's earlier

decision should be altered or abandoned." *New England Power Generators Ass'n v. FERC*, 879 F.3d 1192, 1201 (D.C. Cir. 2018).

However, the Supreme Court has directed that "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 30. Rather, agency action is normally "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977).

### C.   Jurisdiction/Venue

The Court has federal question jurisdiction, *see* 28 U.S.C. § 1331; 5 U.S.C. § 702, because this lawsuit arises under a federal statute. Venue is proper because CIS is a U.S. agency being sued for official action taken. *See* 28 U.S.C. § 1391(e)(1); *see also Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 248 (D.D.C. 2007); *Hunter v. Johanns*, 517 F. Supp. 2d 340, 344 (D.D.C. 2007).

### III.   ANALYSIS

In a nutshell, Congress designed the H-1B visa in 1990 to permit speedy processing and temporary placement of foreign workers in specialty occupations as needed by U.S. employers. CIS has selected H-1B visa petitions from IT consulting businesses, which hire temporary foreign workers and place most of them with third parties for assignments of less than three years, for special treatment with the effect of dramatically slowing the processing of such visa petitions and reducing the accessibility by U.S. employers to such workers. These facts are not contested. The question is whether, in so doing, CIS actions were consistent with law and/or required formal rulemaking. The Court finds that CIS has exceeded the law and was required to engage in formal rulemaking. The CIS 2018 Policy Memo is, therefore, invalid, as are the new

CIS interpretation and requirements concerning itineraries. Accordingly, the Court also finds that CIS cannot enforce the CIS 2010 Guidance Memo against Plaintiffs.

### A. Statute of Limitations

#### 1. INS 1991 Regulation

The government protests that Plaintiffs cannot challenge the INS 1991 Regulation because this lawsuit was filed long after the six-year statute of limitations for APA claims found in 28 U.S.C. § 2401. *See Mendoza v. Perez*, 754 F.3d 1002, 1018 (D.C. Cir. 2014). The APA limitations period begins to run "on the date of the final agency action." *Harris v. FAA*, 353 F.3d 1006, 1010 (D.C. Cir. 2004).

There are two exceptions to this limitations period. First, if an agency issues "some new promulgation" and "creates the opportunity for renewed comment and objection," it has effectively reopened a rule and the statute of limitations does not bar a challenge. *P & V Enters. v. Army Corps of Eng'rs*, 516 F.3d 1021, 1024 (D.C. Cir. 2008). However, a general debate on a topic does not reopen all related aspects. *See Nat'l Ass'n of Reversionary Prop. Owners v. Surface Transp. Bd.*, 158 F.3d 135, 142 (D.C. Cir. 1998) ("When an agency invites debate on some aspects of a broad subject . . . it does not automatically reopen all related aspects including those already decided."). CIS argues that the CIS 2018 Policy Memo is not sufficient to reopen the 1991 Rule for further challenges. Plaintiffs argue that the CIS 2018 Policy Memo constituted a substantial review of the 1991 Rule and changed its requirements, thus reopening the Rule itself.

"[W]here an agency's actions show that it has not merely republished an existing rule in order to propose minor changes to it, but has reconsidered the rule and decided to keep it in effect, challenges to the rule are in order." *Public Citizen v. Nuclear Regulatory Comm'n*, 901 F.2d 147, 150 (D.C. Cir. 1990). Cases regarding the reopening doctrine traditionally discuss the

ability of a notice of proposed rulemaking to "reopen" a prior rule but do not interpret a policy memo as doing so.  To determine if a rule has been reopened, courts look to the language used by the agency.

> An explicit invitation to comment on a previously settled matter, even when not accompanied by a specific modification proposal, is usually sufficient to affect a reopening. . . .  Ambiguity in a[] [Notice of Proposed Rulemaking] may also tilt toward a finding that the issue has been reopened. . . .  When an agency invites debate on some aspects of a broad subject, however, it does not automatically reopen all related aspects including those already decided.

*Nat'l Ass'n of Reversionary Prop. Owners*, 158 F.3d at 141-42.  The CIS 2018 Policy Memo did not invite debate or any comment on the 1991 Rule.  It did not request input on the interpretations announced by the Policy Memo itself, let alone the 1991 Rule, although it did state that the new requirements, if unsatisfied, might lead to denial of a petition.  CIS 2018 Policy Memo at 4 ("If the petitioner does not submit corroborating evidence or otherwise demonstrate that there is a specific work assignment for the H-1B beneficiary, USCIS may deny the petition."); *id*. at 6 ("Adjudicators may deny the petition if the petitioner fails to provide an itinerary, either with the initial petition or in response to a Request for Evidence.").  The reopening exception to the statute of limitations is not applicable to reopen the 1991 Rule.

However, a challenge to a rule as it is applied or enforced may be brought within six years of the enforcement action, without regard to when the rule was adopted.  In this second exception to the APA statute of limitations, the affected party may challenge the enforcement action in an as-applied challenge and may raise the question of whether the agency lacked the statutory authority to adopt the rule in the first place.  *See Indep. Cmty. Bankers of Am. v. Bd. of Governors of Fed. Reserve Sys.*, 195 F.3d 28, 34 (D.C. Cir. 1999) (holding "that a party against whom a rule is applied may, at the time of application, pursue substantive objections to the rule,

including claims that an agency lacked the statutory authority to adopt the rule"); *see also NLRB Union v. Fed. Labor Relations Auth.*, 834 F.2d 191, 195 (D.C. Cir. 1987) ("[A] party who possesses standing may challenge regulations directly on the ground that the issuing agency acted in excess of its statutory authority in promulgating them. A challenge of this sort might be raised, for example, by way of defense in an enforcement proceeding.").[9]

Plaintiffs argue that each denial or partial approval of their H-1B visa applications constituted an application of the 1991 Rule against them that is subject to challenge. CIS responds that an as-applied challenge to a rule admits a narrow category of actions, which does not encompass denials of visa applications. While it is true, as CIS contends, that not every agency application of a rule supports an as-applied challenge, it is not accurate to argue that such challenges are limited to formal enforcement actions. *See Weaver v. Fed. Motor Carrier Safety Admin.*, 744 F.3d 142, 145 (D.C. Cir. 2014) ("[T]he sort of 'application' that opens a rule to such a challenge is not limited to formal 'enforcement actions.'").

To support a challenge, an agency's application or enforcement of its rule must be specific to the challenging plaintiff. Examples of this limitation include when an agency relies on its rule to impose limitations on a broadcast licensee, *Functional Music, Inc. v. FCC*, 274 F.2d 543, 547-48 (D.C. Cir. 1958); when an agency applies its rule to dismiss a complaint, *Am. Tel. & Tel. Co. v. FCC*, 978 F.2d 727, 734 (D.C. Cir. 1992); and when an agency denies a lessee's claim for reimbursements under a rule, *Murphy Expl. & Prod. Co. v. Dep't of Interior*, 270 F.3d 957,

---

[9] It is also possible to avoid the normal statute of limitations when an agency denies a petition to amend or rescind a regulation; the petitioner can appeal the denial and challenge the regulation. *See NLRB Union*, 834 F.2d at 196 ("The second method of obtaining judicial review of agency regulations once the limitations period has run is to petition the agency for amendment or rescission of the regulations and then to appeal the agency's decision."). This process is not relevant here.

957-59 (D.C. Cir. 2001). CIS argues that this case is like *Peri & Sons Farms, Inc. v. Acosta*, where the court rejected an as-applied complaint because the challenged action was not aimed at the plaintiffs and did not affect them in a particular way. 374 F. Supp. 3d 63, 76 (D.D.C. 2019). *Peri* challenged a general notice issued by the Department of Labor on updated annual wage rates; the notice was not directed to the plaintiffs and, therefore, was not susceptible to an as-applied challenge. Here, however, Plaintiffs are challenging the denials or partial approvals of individual visa petitions. Each denial or partial approval is based on an application of the 1991 Rule and its current interpretations by CIS. Therefore, as relevant to individual Plaintiffs, the Court concludes that they can raise as-applied challenges to the Rule itself and its enforced interpretations by CIS in their visa denials or partial approvals.

2. *CIS 2010 Guidance Memo*

For the same reasons discussed above regarding the 1991 Rule, as-applied challenges to the CIS 2010 Guidance Memo will also be permitted as relevant to individual Plaintiffs.

**B.    Challenge to the CIS 2018 Policy Memo**

Both parties spend significant time and energy arguing about whether Plaintiffs may properly challenge the CIS 2018 Policy Memo. Defendant argues that the CIS 2018 Policy Memo itself may not be challenged because it is an interpretive memorandum and not a legislative rule. They ask the Court to evaluate the CIS 2018 Policy Memo as another court did the CIS 2010 Guidance Memo in *Broadgate Inc. v. USCIS*, 730 F. Supp. 2d 240. Plaintiffs contend that the CIS 2018 Policy Memo is a legislative rule because it abandons the 1991 Regulation's "disjunctive test" of an employer-employee relationship "in favor of a test requiring evidence of actual control" and it "unequivocally and unabashedly restricts its adjudicators' discretion." Pls.' Opp'n at 12, 14.

CIS has done everything it might to cloak the CIS 2018 Policy Memo in unassailable interpretive language: it is titled a Policy Memorandum; it specifies that it affords no rights to anyone; CIS asserts it is directed only to agency adjudicators, not to petitioners; and it sprinkles conditional language (may, could, etc.) throughout.

Nonetheless, the CIS argument fails. Although ostensibly directed to agency adjudicators, the CIS 2018 Policy Memo "effects a substantive regulatory change to the statutory or regulatory regime." *Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 653 F.3d 1, 6-7 (D.C. Cir. 2011) (internal quotation marks omitted). A legislative rule supplements a statute, adopts a new position inconsistent with existing regulations, or otherwise effects a substantive change in existing law or policy. *See Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014) ("An agency action that purports to impose legally binding obligations or prohibitions on regulated parties—and that would be the basis for an enforcement action for violations of those obligations or requirements—is a legislative rule."). An agency interpretation is substantively invalid when "it conflict[s] with the text of the regulation the agency purported to interpret." *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 104-05 (2015). Courts have "refused to give deference to an agency's interpretation of an unambiguous regulation, observing that to defer in such a case would allow the agency 'to create *de facto* a new regulation.'" *Id*. at 104 (quoting *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)).

There is no doubt that the CIS 2018 Policy Memo attempted to "impose legally binding obligations . . . on regulated parties" that would be, and have been, "the basis for an enforcement action." *Nat'l Mining Ass'n*, 758 F.3d at 251. It has had an effect to which all of its parts combine: as discussed further, it cherry picks from the formal 1991 Regulation to create a new definition of employer, to which it grafts the CIS 2010 Guidance Memo; it adds substantive

requirements to the nature of the petitioning employer's relationship to the H-1B visa recipient; it adds meaningful requirements to the descriptions of work to be performed by H-1B visa workers, with immediate corroborated evidence of such work for the duration of a visa; and it demands fulsome itineraries on pain of denial for failure to comply. The CIS 2018 Policy Memo is a legislative rule that may be directly challenged by the Plaintiffs.

Additionally, Plaintiffs may mount an as-applied challenge to the CIS 2018 Policy Memo by directly challenging the complete or partial denial of their visa petitions. CIS issued final agency decisions on these petitions and its actions are reviewable. *See Broadgate*, 730 F. Supp. 2d at 244 ("[T]he proper challenge would have been to a specific denial of a visa application by the agency.") (citing *RCM Techs., Inc. v. Dep't of Homeland Sec.*, 614 F. Supp. 2d 39, 45 (D.D.C. 2009)).

### C.    Challenged Reasons for Visa Denials

As described above, Plaintiffs challenge three aspects of the CIS 2018 Policy Memo: CIS's current application of the employer-employee relationship, non-speculative work assignment, and itinerary requirements to H-1B visa petitions. Defendant argues that Plaintiffs go beyond the issues identified in the consolidation order. Not so. This Court was tasked with deciding common issues presented in a large number of visa challenges. One of those issues was specifically defined as "the authority of CIS to deny visas to companies that place employees at third-party locations either because the third-party is determined to be the employer or because specific and detailed job duties are not provided with the visa application." *See* 3/6/2019 Minute Order Referring Case for Limited Purpose (Consolidation Order), *ERP Analysts v. Cissna*, No. 19-cv-300. This issue encompasses CIS's current definition of employer, requirement that petitions include a detailed itinerary, and requirement that an application demonstrate non-

speculative work assignments for the entire length of the requested visa. These CIS policies are at the heart of the collective challenges.

### 1. Sufficiency of Evidence of Employer-Employee Relationship

Section 1184 of the INA states that "[t]he admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulations prescribe . . . ." 8 U.S.C. § 1184(a)(1). The statute continues:

> (1) The question of importing any alien as a nonimmigrant under subparagraph (H) . . . of this title . . . in any specific case or specific cases shall be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer. Such petition, shall be made and approved before the visa is granted. The petition shall be in such form and contain such information as the Attorney General shall prescribe.

*Id*. § 1184(c)(1). From the requirement that the petition must be submitted by "the importing employer" came the requirement of an employer-employee relationship between the petitioning employer and the foreign worker. As discussed above, DOL crafted a definition of employer and included it in its formal regulation concerning Labor Condition Applications. INS included, and CIS has maintained, the identical definition of employer in its final rule regarding the visa application process that DOL promulgated in its initial rule and subsequent changes to the definition by DOL have not been adopted by INS or CIS. The INS definition applied by CIS states:

> United States employer means a person, firm, corporation, *contractor*, or other association, or organization in the United States which:
>
> (1) Engages a person to work within the United States;
>
> (2) Has an *employer-employee relationship* with respect to employees under this part, *as indicated by the fact that it may hire, pay, fire, supervise, or otherwise control the work* of any such employee; and

(3) Has an Internal Revenue Service Tax identification number.

8 C.F.R. § 214.2(h)(4)(ii) (emphasis added).

Following issuance of the CIS 2018 Policy Memo, which incorporated and reaffirmed the CIS 2010 Guidance Memo and added standards to evaluate an employer-employee relationship, CIS has repeatedly denied visa petitions for a failure to demonstrate an adequate employer-employee relationship. *See, e.g.*, Pls.' MSJ, App'x, Dec. 19, 2018 CIS Decision re ERP Analysts Inc. at 1-4 (finding that there was insufficient evidence of an employer-employee relationship even though the record reflected ERP Analysts would "pay the beneficiary a salary, employee benefits, and employment related taxes"). CIS states in its December 19, 2019 decision on ERP Analyst's visa petition that the "employer-employee relationship" is not a defined term by statute or regulation and, therefore, it is free to apply its own interpretation of the "common-law agency doctrine." *Id.* at 2 (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992); *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 445 (2003)). CIS insists that it "must focus on the common-law touchstone of 'control'" as demonstrated by certain limited factors. *Id.* at 3. These "indicia of control" include "when, where, and how a worker performs the job; the continuity of the worker's relationship with the employer; the tax treatment of the worker; the provision of employee benefits; and whether the work performed by the worker is part of the employer's regular business." *Id.* (citing *Clackamas*, 538 U.S. at 445). Even in situations where the employer will "pay the beneficiary a salary, employee benefits, and employment related taxes," CIS looks to "[o]ther incidents of the relationship, e.g., who will oversee and direct the work of the beneficiary, where will the work be located, and who has the right or ability to affect the projects

to which the beneficiary is assigned" to determine if the petitioning employer will be in a continuous employer-employee relationship with the foreign worker.[10] *Id*. at 4.

Plaintiffs argue that the new focus on "control" by CIS eviscerates the INS 1991 Regulation that recognizes an employer-employer relationship whenever the U.S. employer "may hire, pay, fire, supervise, *or* otherwise control the work" of the employee. 8 C.F.R. § 214.2(h)(4)(ii) (emphasis added). Plaintiffs contend that CIS ignores the disjunctive in the word "or" in the INS 1991 Regulation and instead silently replaced it with an "and" that requires the employer to "otherwise control" the work of the foreign worker in all instances instead of recognizing that the necessary degree of "control" is fulfilled by *each* of the examples in the Regulation.

To begin its analysis, the Court must determine the degree of deference that is due to CIS in this instance. An agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks and citation omitted); *see also Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 359 (1989) ("This interpretation of the agency's own regulation is not plainly erroneous or inconsistent with the regulation, and is thus controlling.") (internal quotation marks and citation omitted). The definition in the INS 1991 Regulation at issue—8 C.F.R. § 214.2(h)(4)(ii)—was drafted by DOL and then incorporated by INS as its own. Until 2018, the same definition had been used by CIS. Plaintiffs argue that because INS was not the original author of the definition of employer-employee relationship included in the INS 1991

---

[10] CIS appears to apply a very limited meaning to an "assignment," restricting the determination of who assigns work to the entity that issues day-to-day work orders, rather than considering the fact that the IT consulting company (and visa petitioner) does the initial assignment of the H-1B visa holder to one or more clients in need of the worker's occupational skills.

Regulation, and thereafter used by CIS, no deference should be given to the CIS interpretation. The Court need not resolve this issue, because even evaluating the CIS interpretation under *Auer*, it is clear that it conflicts with the INS 1991 Regulation and, therefore, receives no deference.

CIS argues that the term "employer-employee relationship" is undefined and that it merely interpreted the existing INS 1991 Regulation, adopted without change by CIS, but the argument fails. First, of course, the INS 1991 Regulation clearly articulated the criteria that define the employer-employee relationship in this context, *see* 8 C.F.R. § 214.2(h)(4)(ii) (part 2 of the definition of United States employer), and CIS cites only the "common law" to support its reliance on a single criterion while ignoring all others. The common law may be a useful touchstone but cannot contradict or limit a clear regulation that has been applied with no objection or correction for almost three decades. A new interpretation by CIS decades later that emphasizes one regulatory criterion to the derogation of others, without any relevant change in the underlying statute, is not worthy of deference. The singular emphasis given by CIS to "otherwise control" is revealed by its explanations and its reliance on common law. Because the Court finds that the limited meaning of "employer-employee relationship" as announced and implemented by the CIS 2018 Policy Memo is inconsistent with the longstanding INS 1991 Regulation, it required formal rulemaking and cannot be upheld. The combination of the CIS 2018 Policy Memo and the CIS 2010 Guidance Memo—to which the former gave strict and required reading—destroys any discretion left to CIS adjudicators and renders the 2010 Guidance Memo similarly invalid as applied to Plaintiffs.

The INS 1991 Regulation at issue specifies that the employer "may hire, pay, fire, supervise, or otherwise control the work of [the] employee." 8 C.F.R. § 214.2(h)(4)(ii). Therefore, an employer-employee relationship is evidenced by some aspect of "control" which

may be shown in various ways, be it the ability to hire, to pay, to fire, to supervise, or to control

in another fashion.  The use of "or" distinctly informs regulated employers that a single listed

factor can establish the requisite "control" to demonstrate an employer-employee relationship.

This formulation makes evident that there are multiple ways to demonstrate employer control,

that is, by hiring or paying or firing or supervising or "otherwise" showing control.  In context,

"otherwise" anticipates additional, not fewer, examples of employer control.  INS borrowed the

DOL definition and used it in the INS 1991 Regulation, which it then interpreted in the INS 1995

Guidance Memos that governed for over twenty years without congressional action.  The CIS

2018 Policy Memo abandoned the regulation's examples of employer control and its expansive

use of "otherwise."  Instead CIS drilled down and now requires the assignment of day-to-day

tasks to show the requisite control of an employer-employee relationship.  This new

interpretation was an erroneous effort to substitute the agency's understanding of common law

for the unambiguous text of the INS 1991 Regulation and is inconsistent with it.  The Court finds

that CIS has improperly avoided the rulemaking process and, therefore, may not read any single

criterion in § 214.2(h)(4)(ii) as mandatory to demonstrate an employer-employee relationship but

must consider each sufficient to establish the relationship, including, but not limited to,

"otherwise" showing control.[11]

### 2.    *Proof of Non-Speculative Work Assignments*

The second and third challenged reasons for visa denials are entwined as both

relate to CIS's current requirement that a petitioning employer provide proof of non-speculative

---

[11] Therefore, the Court will remand the challenged visa applications pending before this Judge
for CIS to reevaluate its determinations about the existence of an employer-employee
relationship without requiring an employer "otherwise control" if another indicia of control is
demonstrated.

work assignments for the entire time of an H-1B visa (usually three years) at the time the petition is submitted. CIS has linked the requested evidence with both the need to be employed in a specialty occupation and the requirement that employers provide an itinerary when the H-1B worker will perform services in more than one location.

a. Specialty Occupation

The statute defines specialty occupation. *See* 8 U.S.C. § 1184(i). INS included this same definition in the INS 1991 Regulation:

> an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, architecture, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts.

8 C.F.R. § 214.2(h)(4)(ii). INS also described the evidence that would demonstrate a qualifying position. *See* 8 C.F.R. § 214.2(h)(4)(ii) and (iii)(A). Recently CIS has denied H-1B visa petitions for failure to demonstrate that the H-1B worker would be employed in a specialty occupation because the petition did not include evidence of non-speculative work assignments for the entire duration of the visa. *See, e.g.*, Dec. 19, 2018 CIS Decision re ERP Analysts Inc. at 6-7; Pls.' MSJ, App'x, Nov. 9, 2018 CIS Decision re ERP Analysts Inc. at 11-14; Pls.' MSJ, App'x, Dec. 26, 2018 CIS Decision re Mythri Consulting LLC at 27-30. Plaintiffs complain that CIS mis-uses the definition of a qualifying position—one that "requires theoretical and practical application of a body of highly specialized knowledge," 8 C.F.R. § 214.2(h)(4)(ii)—by requiring the petitioning U.S. employer to demonstrate that it has specific and non-speculative assignments for the entire time requested in the petition, that is, to present corroborated evidence of future IT assignments for the entire three-year period. Plaintiffs argue that the new requirement to prove

non-speculative work assignments for a full three years is not supported by statute or regulation and exceeds the authority of CIS.

The Court again starts with the question of deference. When reviewing an agency's interpretation of its enabling statute and the laws it administers, courts are guided by "the principles of *Chevron*." *Mount Royal Joint Venture*, 477 F.3d at 754. *Chevron* established a two-step inquiry to guide the analysis. The initial question is "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If so, then "that is the end of the matter" because both courts and agencies "must give effect to the unambiguously expressed intent of Congress." *Id*. at 842-43. To decide whether Congress has addressed the precise question at issue, a reviewing court applies "the 'traditional tools of statutory construction.'" *Fin. Planning Ass'n v. SEC*, 482 F.3d 481, 487 (D.C. Cir. 2007) (quoting *Chevron*, 467 U.S. at 843 n.9). It analyzes "the text, structure, and the overall statutory scheme, as well as the problem Congress sought to solve." *Id*. (citing *PDK Labs. Inc. v. DEA*, 362 F.3d 786, 796 (D.C. Cir. 2004); *Sierra Club v. EPA*, 294 F.3d 155, 161 (D.C. Cir. 2002)). When the statute is clear, the text controls and no deference is extended to an agency's interpretation that is in conflict with the text. *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 210-11 (2011). If the statute is ambiguous or silent on an issue, a court proceeds to the second step of the *Chevron* analysis and determines whether the agency's interpretation is based on a permissible construction of the statute. *Chevron*, 467 U.S. at 843; *see also Sherley v. Sebelius*, 644 F.3d 388, 393-95 (D.C. Cir. 2011).

The precise question at issue is: what is a specialty occupation? Congress provided clear guidance on the answer. It defined "specialty occupation" in the law. 8 U.S.C.

§ 1184(i).  Importantly, Congress devised a definition for an "occupation," not a "job."[12]  Thus, a specialty occupation would likely encompass a host of jobs, from trainee to expert along with concomitant but differing personal job duties.  The statute requires that the petitioning employer only employ those who are qualified in specialty occupations.  Nothing in its definition requires specific and non-speculative qualifying day-to-day assignments for the entire time requested in the petition.  While an H-1B visa holder who works in a single location in a specialty occupation is assumed by CIS to receive qualifying daily assignments, CIS requires Plaintiffs to prove, by a preponderance of the corroborated evidence, that the daily assignments of their H-1B visa holders will be in their specialty occupation.  This begs a rational explanation:  very few, if any, U.S. employer would be able to identify and prove daily assignments for the future three years for professionals in specialty occupations.  What the law requires, and employers can demonstrate, is the nature of the specialty occupation and the individual qualifications of foreign workers.

CIS cites the "[s]tandards for [a] specialty occupation position" set out by the INS 1991 Regulation adopted by CIS.  *See* 8 C.F.R. § 214.2(h)(4)(iii)(A).  The INS 1991 Regulation states:

> To qualify as a specialty occupation, the position must meet one of the following criteria:
>
> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an

---

[12] A "job" is defined in Merriam-Webster as "a regular remunerative position" or "a specific duty, role, or function."  Merriam-Webster, https://www.merriam-webster.com/dictionary/job?src=search-dict-hed (last visited Feb. 28, 2020).  An "occupation" is defined as "the principal business of one's life."  Merriam-Webster, https://www.merriam-webster.com/dictionary/occupation (last visited Feb. 28, 2020).

employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties [is] so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

*Id*. CIS argues that the fourth criterion justifies its requirement that employers identify non-speculative assignments in a specialty occupation for the term of the H-1B visa. As CIS is justifying its actions through an interpretation of its own regulation, *Auer* deference applies. *See Auer*, 519 U.S. at 461 (holding an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation").

However, CIS justifies its interpretation by reading the "or" in the INS 1991 Regulation as if it were "and." Under the regulation, an employer must "meet one of the following [four] criteria" to establish that the employee will be placed in a specialty occupation. 8 C.F.R. § 214.2(h)(4)(iii)(A). Criteria one, two, and three address various ways a baccalaureate or other degree may suffice. The fourth criterion does not erase the prior three; to the contrary, it offers an alternative by which a petitioning employer may submit evidence of "specialized and complex" duties that usually require a degree but which the foreign worker has the experience to perform without such studies. Obviously, an employer satisfies the regulation by demonstrating a specialty occupation through evidence that a degree is required to hold the position, without any consideration of the fourth criterion.

CIS appears to argue that the reference in the fourth criterion to "[t]he nature of the specific duties" being "specialized and complex" supports its new requirement of proof of a worker's day-to-day job assignments, rather than his occupation. There is no such requirement in the fourth criterion of the regulation, which recognizes a specialty occupation when "[t]he

37

nature of the specific duties are so specialized and complex" that a baccalaureate or higher

degree is usually required, *id*. § 214.2(h)(4)(iii)(A)(4), much less in criteria one, two, and three.

The reference to the "nature of the specific duties" may seem to support the CIS position but it is

a mirage. The regulation offers one way to demonstrate a specialty occupation when a foreign

worker does not have a degree but can perform complex duties in an occupation that usually

requires a degree. The general statement pertaining to such a demonstration does not apply to all

H-1B visa holders. It cannot be expanded, under the guise of policy, to require advance notice of

all assignments and work duties at the time of petition.[13] The CIS interpretations of the INS

1991 Regulation are plainly erroneous.[14]

> b.  Itinerary Requirement

CIS has also denied, or partially denied, H-1B visas because the accompanying

itinerary did not include descriptions of non-speculative work assignments for the duration of the

requested visa. *See, e.g.*, Dec. 26, 2018 CIS Decision re Mythri Consulting LLC at 25-26.

Plaintiffs challenge the itinerary requirement in its entirety and also argue that the new CIS

requirement of three years' worth of non-speculative work assignments is inconsistent with the

---

[13] The denials to Plaintiffs' petitions often reference *Defensor v. Meissner*, 201 F.3d 384, 387 (5th Cir. 2000), as support for the CIS requirement of specific work assignments. *Defensor* held that the contractor employer could be required to show that the entity where the nurses would be placed required a degree, thereby ensuring that the position was a specialty occupation. *Id*. at 387-88. CIS attempts to extend *Defensor*'s holding to require that "[t]he actual work to be performed by the beneficiary will be in a specialty occupation based on the work requirements imposed by the end-client who uses the beneficiary's services." Dec. 19, 2018 CIS Decision re ERP Analysts Inc. at 6. But *Defensor* merely applied the definition of "specialty occupation" which normally requires a degree. This Court's conclusions, above, are not inconsistent.

[14] Therefore, the Court will remand all the challenged visa applications that are pending before this Judge for CIS to reconsider only whether the occupations qualify as "specialty occupations" under the governing INS 1991 Regulation without the requirement that employers provide non-speculative work assignments for the entire duration of a visa period.

statutory authorization of periods of paid "non-productive status" for holders of H-1B visas in between jobs. *See* American Competitiveness and Workforce Improvement Act of 1998 (ACWIA), Pub. L. 105-277, 112 Stat. 2681 (October 21, 1998), codified at 8 U.S.C. § 1182(n)(2)(C)(vii) (clarifying that an employer of an H-1B nonimmigrant who places the employee "in nonproductive status" and "fail[s] to pay the nonimmigrant full-time wages" has failed to meet a condition of the Labor Condition Application).[15]

When INS issued the INS 1991 Regulation, it included an itinerary requirement which remains outstanding:

> A petition that requires services to be performed or training to be received in more than one location must include an itinerary with the dates and locations of the services or training and must be filed with USCIS as provided in the form instructions. The address that the petitioner specifies as its location on the Form I-129 shall be where the petitioner is located for purposes of this paragraph.

8 C.F.R. § 214.2(h)(2)(i)(B). Thus, the itinerary requirement is not in the statute. CIS tracks the genesis of the itinerary requirement to the statutory grant of authority provided to the Attorney General, noting that Congress provided that "admission to the United States of any alien as a nonimmigrant shall be for such time and under such conditions as the Attorney General may by regulation prescribe." 8 U.S.C. § 1184(a)(1); *see also* CIS MSJ at 33-34.[16] As discussed above, the INS 1991 Regulation can only be challenged on an "as applied" basis.

_____

[15] The non-productive status provision was drafted to address "benching." "Benching was a practice where, after being granted H1B status, an employer would 'bench' an employee when it lacked work for the employee to do, and the employer would not pay the employee during this period of benching." Pls.' MSJ at 33-34. Periods without work are now allowed for H-1B visa holders as long as they continue to be paid.

[16] Plaintiffs acknowledge that § 214.2(h)(2)(i)(B) includes an itinerary requirement, but they argue that that section was intended to control entertainers and performers in the use of nonimmigrant visas, not specialty workers in general. Plaintiffs point to a proposed 1998 rule that was never finalized, which they believe demonstrates that INS intended to clarify that an

Here, too, CIS has misread the statute—which speaks of "specialty occupations" performed by educated persons—as meaning daily work assignments. Thus, while the INS 1991 Regulation seeks "dates and locations" of the services to be provided, 8 C.F.R. § 214.2(h)(2)(i)(B), it does not include work assignments or the identity of those making daily assignments. Indeed, INS interpreted its own INS 1991 Regulation broadly in the 1995 Guidance Memos which CIS has rescinded or superseded. Now, without rulemaking, CIS requires new details in an itinerary that are inconsistent with a professional "specialty occupation" as previously enforced for decades and inconsistent with the regulation.

The Court concludes that, as applied to these Plaintiffs in the IT consulting sector, it is irrational, that is, arbitrary and capricious, to impose the INS 1991 Regulation as does CIS, requiring contracts or other corroborated evidence of dates and locations of temporary work assignments for three future years; it is, in fact, a total contradiction of the Plaintiffs' business model of providing temporary IT expertise to U.S. businesses. Nothing more clearly illustrates the legislative nature of the CIS interpretation of the Regulation because it would effectively destroy a long-standing business resource without congressional action.

Plaintiffs' final challenge to the itinerary requirement is that it is inconsistent with the ability of employers to place H-1B visa employees in "non-productive status" if suitable work is unavailable. Plaintiffs argue that Congress considered the possibility that at some point during a three-year visa period, an H-1B visa holder might not engage in qualifying work or qualifying work might not be available. In response, Congress enacted the ACWIA, to permit employers to place holders of H-1B visas in "non-productive status" as long as the employer

---

itinerary was only expected from foreign entertainers and performers. The 1998 Proposed Rule never morphed into a Final Rule and the itinerary requirement in the 1991 Regulation continues unchanged.

continued to pay the approved fulltime wage. *See* 8 U.S.C. § 1182(n)(2)(C)(vii)(I) ("It is a failure . . . for an employer, who has filed an application under this subsection and who places an H-1B nonimmigrant designated as a full-time employee . . . in nonproductive status due to a decision by the employer (based on factors such as lack of work), or due to the nonimmigrant's lack of a permit or license, to fail to pay the nonimmigrant full-time wages . . . for all such nonproductive time."). Obviously, in 1998 Congress anticipated non-working periods during the term of an H-1B visa and moved to avoid any negative impact on U.S. employees by making foreign workers cheaper to employ. *See id*.

The Court finds that the itinerary requirement, as imposed by the CIS interpretation of the INS 1991 Regulation and applied to Plaintiffs by the CIS 2018 Policy Memo, is incompatible with the 1998 ACWIA that addresses the same subject, in immediately-related administrative schemes, and authorizes employers to place H-1B visa holders in paid non-productive status.[17] Therefore, the itinerary requirement in the INS 1991 Regulation, as adopted by INS and now enforced by CIS, has been superseded by statute and may not be applied to H-1B visa applicants.[18]

### D.    Authority of CIS to Grant H-1B Visas for Less Than Three Years

The final consolidated question to be resolved is whether CIS has the authority to issue partial denials and grant H-1B visas for less than three years. It has traditionally been the practice of U.S. employers to petition for H-1B visas for the full three-year term. Until the CIS

---

[17] DOL is responsible for monitoring compliance with all labor conditions and may, on complaint, fine or otherwise penalize employers who do not adhere to the Labor Condition Application. The ACWIA declared that an employer who placed H-1B visa holders in non-productive status, with full-time pay, committed no violation.

[18] The Court will remand all challenged visa applications pending before this Judge, denied by CIS in whole or in part due to the itinerary requirement, to CIS for reconsideration consistent with this Opinion.

2018 Policy Memo, both INS and CIS usually granted or denied visa petitions in their entirety without limiting the term by only granting in part.  Plaintiffs contend that CIS must continue this practice, that is, that CIS may only grant or deny H-1B visas in their entirety.

The same statute that granted INS authority to regulate the new H-1B visas for nonimmigrants also permitted the Attorney General to determine applicable time limits.  *See* 8 U.S.C. § 1184(a)(1) ("The admission to the United States of any alien as a nonimmigrant shall be *for such time* and under such conditions as the Attorney General may by regulation prescribe.") (emphasis added).  The statute provided only one caveat, to-wit, "the period of authorized admission as such a nonimmigrant may not exceed 6 years."  *Id*. § 1184(g)(4).  The INS 1991 Regulation, which has been adopted and maintained by CIS without substantive change, addressed the issue:

> Validity.  The initial approval period of an H petition shall conform to the limits prescribed as follows:
>
> (A)(1)  H-1B petition in a specialty occupation.   An approved petition classified under section 101(a)(15)(H)(i)(b) of the Act for an alien in a specialty occupation shall be valid for a period of *up to three years* but may not exceed the validity period of the labor condition application.

8 C.F.R. § 214.2(h)(9)(iii) (emphasis added).  Such a visa may be extended for an additional three years.  *See id*. § 214.2(h)(15)(ii)(B)(1) ("An extension of stay may be authorized for a period of up to three years for a beneficiary of an H-1B petition in a specialty occupation or an alien of distinguished merit and ability.  The alien's total period of stay may not exceed six years.").  The plain language of the INS 1991 Regulation provides that CIS may issues visas "for up to three years."  *Id*. §§ 214.2(h)(9)(iii), 214.2(h)(15)(ii)(B)(1).  It did not require INS, and does not require CIS, to grant or deny a petition for the entire period requested, although that was

the usual practice until 2018. The INS 1991 Regulation clearly allows petitions to be granted for "up to three years," which necessarily allows for lesser periods as well.

However, it is uncontested that both INS and CIS have almost uniformly granted a visa petition for three years until recently. The CIS 2018 Policy Memo introduced a practice of granting visa petitions from IT consultants for less than three years, which represents a change after decades of past practice on which petitioning U.S. employers have come to rely—and which, presumably, remains the practice for employers in other industries. In these circumstances, CIS must provide a legitimate reason for any decision to deny, in whole or in part, each petition for an H-1B visa. The agency must "set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Tourus Records*, 259 F.3d at 737 (internal quotation marks omitted); *see also Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("At bottom, an agency must explain 'why it chose to do what it did.'") (quoting *Tourus Records*, 259 F.3d at 737).

Insofar as CIS denied Plaintiffs' petitions for H-1B visas, in whole or in part, without setting forth legitimate reasons for its decisions, the agency actions were arbitrary and capricious in violation of the APA.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiffs' Motion for Summary Judgment [Dkt. 14], grant in part and deny in part Defendant's Cross-Motion for Summary Judgment [Dkt. 16]. The subset of cases that are assigned to Judge Rosemary M. Collyer will be remanded to CIS for reconsideration consistent with this Opinion and the Court will order that such reconsideration shall be completed in no more than 60 days. This Opinion and accompanying Order will be filed on the dockets of all the cases consolidated

for a limited purpose.  The parties in those cases assigned to other judges will be ordered to file a

joint status report regarding the effect of this decision on their specific cases no later than two

weeks after the issuance of this Opinion.  A memorializing Order accompanies this Opinion.


Date: March 10, 2020

                                        _____
                                        ROSEMARY M. COLLYER
                                        United States District Judge